# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Dongguan Fayung Industrial Co., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Gamenamics Inc. and Catherine Burton, <br><br> Defendants. | Case No. 19-cv-03288 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case arises out of a business relationship between Plaintiff Dongguan Fayung Industrial Co., Ltd. ("Fayung") and Defendants Gamenamics, Inc. ("Gamenamics") and Catherine Burton ("Burton"), Gamenamics's sole shareholder/President Defendant. Fayung alleges one count of breach of contract and one count of "piercing the corporate veil" against Gamenamics. It also alleges two counts of breach of contract, one count of common law fraud, one count of unjust enrichment, and one count of "piercing the corporate veil" against Burton. All claims are in violation of Illinois law. [16]. The case is now before this Court on Burton's motion to dismiss Fayung's Amended Complaint as against her pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). [1] [20]. Because the Amended Complaint

---

[1] Gamenamic Inc. filed an answer on August 2, 2019. [19].

1

lacks sufficient facts to establish subject matter jurisdiction, this Court grants Defendant's motion and dismisses the Amended Complaint as to both Defendants.

## I. BACKGROUND

Plaintiff Fayung is a Chinese corporation with its principal place of business in China. [16] ¶ 2. It designs, manufactures, and distributes plastic products, sports goods, kids' toys, hardware products, and sports equipment. *Id.* ¶ 3. Defendant Gamenamics was an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 4. At all relevant times, Gamenamics distributed and sold game articles, toys, and products for use in parties, games, entertainment, and recreation. *Id.* ¶ 5. Plaintiff alleges that Gamenamics was not in good standing during the period in and around January 10, 2019. *Id.* ¶ 6. Unsurprisingly then, Gamenamics was voluntarily dissolved on February 7, 2019. *Id.* ¶ 7. Defendant Burton, an Illinois resident, was the President and sole shareholder of Gamenamics. *Id.* ¶ 8.

In early 2011, Gamenamics approached Fayung about establishing a business relationship. *Id.* ¶ 16. Gamenamics sought to purchase Fayung's archery sets, soccer equipment, kids bowling equipment, ring toss, baseball toy sets, bean bag tosses, fun golf, and other game or toy items. *Id.* ¶ 16. Fayung agreed, and the two entities started doing business. *Id.* The typical course of their interactions occurred as follows. First, Gamenamics would submit a purchase order ("PO") to Fayung specifying the specific product types and quantities. *Id.* ¶ 17. Upon receiving the PO, Fayung would manufacture, package, and deliver the specified products directly to

Gamenamics's retail customers. *Id.* ¶ 17. Upon receipt of an invoice, Gamenamics remitted payment to Fayung from Burton's address. *Id.* ¶ 18.

The relationship hit a snag, however, when Defendants allegedly began delaying payment on Fayung's invoices. *Id.* ¶ 20. Coming to a head in August 2016, Fayung emailed Burton reminding her that Gamenamics owed Fayung for thirty-five unpaid POs, totaling $430,525.92. *Id.* ¶¶ 20–23; [17] (Ex. 8). To remedy this situation, Plaintiff alleges that in early December 2016, Gamenamics and Fayung reached a settlement agreement for the thirty-five unpaid POs ("Settlement Agreement"). *Id.* ¶ 26. Under this agreement, Gamenamics promised to pay Fayung $102,888 in installments over several months. *Id.*

Gamenamics tendered its first payment in February 2017, paying $30,000 remitted from Burton's home address. *Id.* ¶ 27; [17] (Ex. 45). But that payment ended up being the only payment Defendants delivered. *Id.* ¶¶ 27–31. In March 2018, Burton emailed Fayung acknowledging that Gamenamics still owed $72,888. *Id.* ¶ 29; [17] (Ex. 46) ("Sorry it has been a long time we [sic] are still not able to make payment [sic] we agreed to in 2017. We know we still owe $30,000 + $25,000 + $17,888 = Total $72,888."). By September 2018, Burton emailed Fayung, informing it not to expect payments anytime soon as she claimed to be the victim of a wire fraud hack. *Id.* ¶ 30; [17] (Ex. 47). From this point onward, Defendants failed to make any payments beyond the first $30,000 payment. *Id.* ¶ 31. Defendants outstanding balance from the Settlement Agreement forms the first basis for this action. [16] ¶¶ 1, 11.

3

The second relevant interaction in this suit involves one of the thirty-five POs. In June 2016, Gamenamics sent Plaintiff a PO for $24,310.40, ordering bowling sets for shipment by mid-September 2016. *Id.* ¶ 24; [17] (Ex. 41). Plaintiff alleges, however, that it expressed its reluctancy to ship the goods due to Gamenamics's consistent failure to remit payment. [16] ¶ 24. To ease Plaintiff's fears, Defendant Burton allegedly personally entered into a second agreement with Plaintiff separate and apart from the original PO. *Id.* ¶ 25. Under this alleged new agreement, Burton promised Fayung she would pay $25,000 by the end of the month if Fayung shipped the order on time. *Id.* at ¶ 25. Relying on this additional promise, Fayung shipped the goods; yet Gamenamics never paid. *Id.*

By aggregating its alleged damages from these two incidents, Plaintiff alleges its damages exceed the $75,000 amount in controversy. *Id.* ¶¶ 1, 10–11 ("The amount in controversy in this action is $97,256 consisting [of] i) $72,888 owed by Gamnamics to Fayung under a Settlement Agreement . . . and ii) $24,368 invoiced amount for the goods delivered by Fayung relying on Ms. Burton's payment promise.").

## II. <u>LEGAL STANDARD</u>

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4

To survive a motion to dismiss, the complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when the pled "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The level of specificity for factual allegations required to state a plausible claim for relief depends upon the complexity of the legal theory alleged, *see Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008), but threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements," never suffice. *Iqbal*, 556 U.S. at 678.

In evaluating the complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Id.*; *Alamo v. Bliss*, 864 F.3d 541, 548–49 (7th Cir. 2017). The Court need not, however, accept legal conclusions or conclusory factual allegations. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

5

Rule 12(b)(1) permits the court to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss, the Plaintiff bears the burden of "persuading the court that subject matter jurisdiction exists." *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998).

## III. ANALYSIS

### A. The Purchase Order Agreement Allegations

Because the $72,888 in damages alleged from the Settlement Agreement falls short of the $75,000 statutory threshold, Plaintiff also relies upon Burton's alleged additional promise regarding one of the thirty-five unpaid POs. [16] ¶ 11 (explaining that the amount in controversy is $97,256 consisting of the sums from the Settlement Agreement and Burton's promise). According to Plaintiff, Burton promised to pay Fayung an additional $25,000, so that Fayung shipped bowling sets by mid-September 2016. [16] ¶¶ 24–25; [17] (Ex. 41) at 1.

To support its allegations about Burton's promise, Plaintiff attaches to the complaint an email it sent to Burton in which its representative alludes to the existence of an agreement. [17] (Ex. 44) ("In the last email, you said you were having a difficult time sending 25K before 9/15, and asked us to ship TRU PO#538243 on time ,then [sic] you would send 25K by end [sic] of September."). Other than this one vague reference about Burton agreeing to pay Fayung $25,000, the allegations contain no other email or other communication or evidence showing any separate $25,000 contract with Burton. *See generally,* [16]; [17].[2]

---

[2] Even though final resolution of the dispute lies beyond a motion to dismiss, Burton, for her part, finds Plaintiff's description of the parties' interaction "perplexing," [22] at 6, and she denies the existence of

6

Although Plaintiff offers several theories to hold Burton liable for this additional agreement,[3] under any legal theory, Plaintiff's allegations that Burton offered to pay an additional $25,000 (on top of the $24,310.40 required by the PO) are speculative at best. *Twombly*, 550 U.S. at 556–57. Plaintiff's allegations fail to plausibly allege any second agreement, especially where the purported "email reference" agreement involves nearly the same monetary amount as the original PO ($25,000 vs. $24,310.40) and the same shipment timeframe as the underlying PO (mid-September 2016). [16] ¶¶ 24, 25; [17] (Ex. 41); [17] (Ex. 44). What is more, throughout the Amended Complaint, Plaintiff's own allegations actually conflate the $25,000 that Burton allegedly agreed to pay with the $24,310.40 invoiced amount. *Id.* ¶ 43 ("As of July 3, 2019, the remaining $25,000 (or $24,368 invoiced amount) promised by Ms. Burton for the goods delivered by Fayung on her promise in connection with TRU PO 538243 remains unpaid.").

Looking at these allegations in the light most favorable to the non-moving party, Plaintiff has, at most, alleged that Burton agreed to pay an additional $689.60 (the difference between the promised $25,000 and the originally agreed upon $24,310.40) to induce Plaintiff to ship the goods. *See* [16] 24–25; [17] (Ex. 40). Plaintiff fails to sufficiently allege any facts allowing this Court to plausibly infer that Burton agreed to pay an additional $25,000 on top of the $24,310.40 as posited in the

---

any additional agreements. Instead, she contends that anything she or Gamenamics owed remained encompassed in the Settlement Agreement, *see id.*, which by Plaintiff's own admission, included this PO. *See* [16] ¶¶ 21, 24; [17] (Ex. 8), (Ex. 41).

[3] Plaintiff asserts the following against Burton: (1) breach of contract, (2) fraud, or (3) unjust enrichment. [16] Counts II, III, and IV.

complaint. Declining to artificially double-count the PO total, this Court must now consider its ability to exercise jurisdiction over the claims as alleged.

### B. Subject Matter Jurisdiction

This matter comes before this Court based upon diversity. [16] ¶¶ 2–14. This Court may only exercise diversity jurisdiction if: (1) the parties are completely diverse; and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Only the second requirement is relevant here.

Burton raises an argument as to a lack of subject matter jurisdiction but for the wrong reason. [22] at 9–10. She incorrectly argues that Plaintiff fails to satisfy the mandatory jurisdictional amount because the amount in controversy must be met for each claim and cannot be aggregated. *Id.* This proposition is incorrect. *LM Ins. Corp. v. Spaulding Enter. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008) (explaining that "so long as the amount in controversy requirement is satisfied with respect to . . . the proper aggregation of counts . . . for each defendant" the analysis may stop) (citations omitted).

But while Burton incorrectly claims the amount in controversy may not be aggregated, Plaintiff's claims do present another jurisdictional problem.[4] The total amount in controversy Plaintiff alleges is $97,256, consisting of the $72,888 owed under the Settlement Agreement and $24,368 allegedly owed by Burton for the prompt delivery of the goods in connection with a PO. [16] ¶ 11. But as explained

---

[4] Although Burton does not raise this exact argument in her motion to dismiss, this Court has an independent obligation to consider whether it has subject matter jurisdiction over this matter. *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992).

8

before, considering the fact in the light most favorable to Plaintiff, it has at best alleged an aggregate amount in controversy of $73,577.60 (combining the amount from the Settlement Agreement and possible $689.60 that Burton promised). This falls below the threshold and mandates dismissing Plaintiff's suit.

Moreover, even if Plaintiff had alleged $75,000 in damages over these two incidents, Plaintiff's allegations against Gamenamics would fall short. Its only allegations against Gamenamics are contained Count I regarding the Settlement Agreement, which alleges $72,888 in damages. [16] ¶ 1, Count I.[5] But Plaintiff must allege facts establishing the requisite amount in controversy for each Defendant. *LM Ins. Corp.*, 533 F.3d at 548. Thus, Plaintiff has not met its burden to establish a sufficient amount in controversy against Defendant Gamenamics for this Court to exercise jurisdiction.

In sum, because Plaintiff does not plausibly state claims that can be aggregated to $75,000 against each Defendant, this Court lacks subject matter jurisdiction over this matter as currently alleged. For that reason, the Amended Complaint must be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendant Burton's motion to dismiss, [20], is granted. This Court also dismisses the Amended Complaint without prejudice for

---

[5] Count V to "pierce the corporate veil" is asserted against Gamenamics and Burton. [16] at Count V. But "under Illinois law, piercing the corporate veil is an equitable remedy, not a cause of action." *U.S. v. All Meat and Poultry Prod. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007). Thus, Count V is not a proper claim not can it be used by Plaintiffs to meet the amount in controversy requirement.

9

lack of subject matter jurisdiction and gives Plaintiff leave to re-amend. Any failure to replead by March 4, 2020 will result in conversion of the dismissal of the Amended Complaint to a dismissal with prejudice.

Dated: February 12, 2020

ENTERED:

_____
John Robert Blakey
United States District Judge